**CLARK HILL PLC**
Benjamin J. Branson, SBN 029233
14850 North Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone: (480) 684-1100
Facsimile: (480) 684-1199
Email: bbranson@clarkhill.com

**KIRKLAND & ELLIS LLP**
Matthew S. Owen, P.C. (*pro hac vice forthcoming*)
matt.owen@kirkland.com
T.J. McCarrick (*pro hac vice forthcoming*)
tj.mccarrick@kirkland.com
K. Ross Powell (*pro hac vice forthcoming*)
ross.powell@kirkland.com
1301 Pennsylvania Ave, NW
Washington, D.C. 20004
Telephone: 202-389-5000

*Attorneys for Movant Southern Glazer's Wine and Spirits, LLC*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Southern Glazer's Wine and Spirits, LLC,<br><br>Movant,<br><br>v.<br><br>Hensley Beverage Company,<br><br>Respondent. | CASE NO. ________________<br><br>**SOUTHERN GLAZER'S WIND AND SPIRITS, LLC'S MOTION TO COMPEL AND MEMORANDUM OF LAW IN SUPPORT** |
| Federal Trade Commission,<br><br>Plaintiff,<br><br>v.<br><br>Southern Glazer's Wine and Spirits, LLC,<br><br>Defendant. | *Underlying Action Pending in the*<br><br>United States District Court for the Central District of California<br><br>Case No. 8:24-cv-02684-FWS-ADS |

Southern Glazer's Wine and Spirits ("SGWS"), pursuant to Federal Rules of Civil Procedure 37 and 45, respectfully moves the Court for an order compelling Respondent Hensley Beverage Company ("Hensley") to produce the documents requested in SGWS's subpoena issued on August 18, 2025. Despite the requests being relevant and tailored to SGWS's defense, Hensley has refused to respond to any of the fourteen requests set out in the subpoena. This motion is supported by the following Memorandum of Points and Authorities.

DATED this 2nd day of December, 2025.

**CLARK HILL PLC**

By: */s/ Benjamin J. Branson*
Benjamin J. Branson
*Attorneys for Defendant Southern Glazer's Wine and Spirits, LLC*

- And –

**KIRKLAND & ELLIS LLP**
Matthew S. Owen, P.C. (*pro hac vice forthcoming*)
T.J. McCarrick (*pro hac vice forthcoming*)
K. Ross Powell (*pro hac vice forthcoming*)

## TABLE OF CONTENTS

**Page**

INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 1

LEGAL STANDARD .......... 2

ARGUMENT .......... 2

A. SGWS's Requests Are Relevant .......... 1

B. SGWS's Requests Are Not Overbroad or Unduly Burdensome .......... 1

C. SGWS's Requests Are Proportional to the Needs of the Case .......... 2

D. The Protective Order Alleviates Hensley's Confidentiality Concerns .......... 1

CONCLUSION .......... 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On August 18, 2025, Southern Glazer's Wine and Spirits, LLC ("SGWS") served a subpoena duces tecum on Hensley Beverage Company ("Hensley"), one of the largest alcohol distributors in Arizona. Like Hensley, SGWS distributes wine and spirits products, including in Arizona. Currently, SGWS is defending a suit brought by the Federal Trade Commission ("FTC") that alleges SGWS engaged in discriminatory pricing practices in violation of the Robinson-Patman Act ("RPA"), a bygone act that has not been enforced in a quarter century. *FTC v. Southern Glazer's Wine and Spirits, LLC*, No. 8:24-cv-02684-FWS-ADS (C.D. Cal. Dec. 12, 2024). The FTC seeks a nationwide injunction that would force SGWS to change its pricing practices. If granted, this sweeping relief will interfere with the already heavily regulated beverage alcohol industry, to consumers' detriment.

The documents SGWS seeks from Hensley are relevant to SGWS's defenses, not unduly burdensome, and proportional to the needs of the case. The subpoena seeks documents concerning Hensley's wine and spirits purchases and sales, pricing and accounting practices, and interactions with suppliers who manufacture alcohol. *See* Ex. 1 (SGWS Subpoena). SGWS expects these documents will support its arguments that (1) any retailers to whom it charged different prices for the same goods do not compete, (2) SGWS's pricing practices are justified by market conditions, differences in the cost of serving different retailers, and SGWS's legitimate efforts to meet competition, and (3) that alcohol sales from distributors to retailers occur outside of interstate commerce and are not subject to the RPA. The breadth of SGWS's requests mirrors the wide scope of the FTC's

allegations. To date, the FTC has identified over 17 million different pairs of allegedly discriminatory sales by SGWS to retailers in 30 states since 2018, each of which the FTC contends is an individual violation of the RPA. This includes 82,258 sales in Arizona. Given Hensley's significant business in Arizona, data on Hensley's wine and spirits sales and purchases will be particularly relevant to SGWS's defenses.

Counsel for SGWS conferred with counsel for Hensley twice before filing this motion and offered to confer further about narrowing specific requests. In between conferrals, Hensley sent a letter objecting wholesale to SGWS's subpoena and indicating that it would "not produce any of the requested documents." *See* Ex. 2 (9/11/2025 Hensley Letter). On September 29, Hensley confirmed by email that it would not produce any documents in response to the subpoena on the grounds stated in its letter. *See* Ex. 3 (9/29/2025 C. Gooch Eml.).

Hensley's vague objections, untethered from any specific request in the subpoena, do not justify Hensley's wholesale refusal to produce documents. The information is relevant, and Hensley offers no support for its conclusory claims of burden and prejudice. Hensley argues that the production of responsive information "would risk causing substantial damage to Hensley" because SGWS is its competitor, *see* Ex. 2, but the protective order in the underlying litigation will maintain the confidentiality of Hensley's information, *see* Ex. 1, Exhibit C (Amended Stipulated Protective Order). SGWS respectfully moves the Court pursuant to Federal Rules of Civil Procedure 37 and 45 to compel Hensley to produce documents responsive to its subpoena.

**FACTUAL BACKGROUND**

SGWS is a family-owned distributor of alcoholic beverages, operating in forty-seven markets across the United States. SGWS purchases beverages from suppliers and subsequently sells them to retailers of all sizes, from large chains such as Costco to local gas stations. Over the objection of now-Chairman Andrew Ferguson and former Commissioner Melissa Holyoak, the FTC filed a complaint against SGWS in the Central District of California on December 12, 2024. The complaint alleges that since 2018, SGWS has engaged in price discrimination in millions of transactions, in violation of Section 2(a) of the RPA and Section 5 of the FTC Act, by selling various brands of wine and spirits to independent retailers at higher prices than to chain customers. *See FTC v. Southern Glazer's Wine and Spirits, LLC*, ECF 57 at ¶¶ 1-6, 85-88 (attached to Ex. 1 as Exhibit A).

Enacted in 1936, Section 2(a) of the RPA seeks to prevent anticompetitive practices by prohibiting sellers from pricing commodities differently to buyers. 15 U.S.C. §13(a). To establish a violation, a party must show that "(1) the challenged sales were made in interstate commerce; (2) the items sold were of like grade and quality; (3) the seller discriminated in price between the disfavored and the favored buyer; and (4) the effect of such discrimination may be… to injure, destroy, or prevent competition to the advantage of a favored purchaser." *U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*, 89 F.4th 1126, 1134 (9th Cir. 2023) (quoting *Volvo Trucks N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 176-77 (2006) (internal quotations omitted)), *cert. denied*, 145 S. Ct. 141 (2024). The last element ensures that not all pricing discrimination is

banned—only that which threatens to injure competition. *Volvo*, 546 U.S. at 176. Changes in price can be legitimate where they are made "in response to changing conditions affecting the market for or the marketability of the goods." 15 U.S.C. §13(a). The RPA offers defendants two affirmative defenses to rebut a prima facie case: Differences in price are permissible where (1) they account for differences in cost due to the manufacture, sale, or delivery of a commodity, or (2) they reflect an effort to meet competition. 15 U.S.C. §13(a)-(b). Similarly, Section 5 of the FTC Act aims to prevent anticompetitive practices. However, absent evidence of antitrust law violations or collusive or similar conduct, a party's practices are not considered "unfair" under Section 5. *E.I. du Pont de Nemours & Co. v. F.T.C.*, 729 F.2d 128, 140 (2d Cir. 1984).

As the FTC acknowledges in its complaint, the market for alcoholic beverages is unique. It is a "non-integrated distribution system regulated by each state and requiring three distinct tiers." *FTC v. Southern Glazer's Wine and Spirits, LLC*, Compl. ¶ 24 (Ex. 1 at Exhibit A). Within this three-tiered system, suppliers of alcohol (such as distillers and vintners) may sell wine and spirits products only to distributors (the second tier), who in turn re-sell them to retailers (the third tier), who finally sell the products to consumers. *See id.; see generally Day v. Henry*, 686 F. Supp. 3d 887, 890 (D. Ariz. 2023) (explaining that the "separation" between manufacturing, wholesale, and retail interests is designed to "prevent suppliers from dominating local markets through vertical integration"), *aff'd*, 152 F.4th 961 (9th Cir. 2025).

Under the Twenty-First Amendment, states have unique constitutional authority to regulate alcohol sales and do so in varied ways. *See* U.S. Const. amend. XXI. For example,

several states, including Arizona, impose "come to rest" laws mandating that alcohol become part of a distributor's in-state inventory before it is sold to retailers. *See* Ariz. Rev. Stat. § 4-243.01 ("All spirituous liquor shall be unloaded and remain at the wholesaler's premises for at least twenty-four hours.").

Notwithstanding the state specific nature of the market, the FTC seeks a sweeping nationwide injunction forcing SGWS to change its pricing practices. SGWS has pressed the FTC to identify specific transactions the FTC alleges violate the RPA and served an interrogatory requesting that the FTC describe each alleged instance of unlawful price discrimination with specificity. In stages, over several months, the FTC provided some of the requested information, eventually identifying over 17 million allegedly discriminatory transactions in 30 states. SGWS understands the FTC may supplement this list of transactions further.

SGWS denies the FTC's allegations. SGWS argues that its practices are lawful because any differences in price are cost-justified, designed to meet competition, and/or responsive to changed market conditions. SGWS intends to show that many of the millions of transactions that the FTC has alleged to date pair retailers that do not actually compete and so cannot give rise to an RPA claim. *See* 15 U.S.C. § 13(a). SGWS's pricing is pro-competitive, to the benefit of end consumers of beverage alcohol. SGWS also maintains that the sales at issue are not in interstate commerce—an essential element of the RPA claim—because SGWS does not sell alcohol across state lines and instead abides by the various states' "come-to-rest" laws in the tightly regulated alcohol industry.

To help support these defenses, SGWS issued subpoenas to eleven beverage distributors in August 2025. Some of these are other large national players like SGWS. Other distributors have large presences in the five exemplar states that the FTC focuses on in its complaint, which include Arizona. Hensley is one of the most prominent alcohol distributors in Arizona, with "deep roots in the Arizona community."[1] It "distributes a diverse and first-rate portfolio of beverages, including….an assortment of fine wines and spirits" and "servic[es] a customer base of over 8,000 retail accounts throughout Arizona."[2]

The subpoenas SGWS served on distributors each include the same fourteen requests. *See* Ex. 1. The requests seek transaction data for other distributors' purchases and sales of wine and spirits, and other information that would support and give context to that data, such as documents that show how the distributor determines its pricing, manages its costs, and complies with state laws. *See* Ex. 1. This information will help SGWS demonstrate the pro-competitive nature of its pricing practices and provide support for the affirmative defenses recognized under the Act. Specifically, it will showcase legitimate, cost-based reasons for differences in prices to different retailers and demonstrate that SGWS's pricing practices reflect market conditions and are a good-faith effort to meet competition. The requests seek documents "from January 1, 2020, to present," related to "distilled spirits and wine…not…beer." *See* Ex. 1, Instructions ¶ 2, Definitions ¶¶ 2, 12.

---

[1] Hensley Beverage Company, https://hensley.com/ (last accessed Dec. 1, 2025).

[2] Hensley Beverage Company, *About Us*, Greater Phoenix Chamber of Commerce, https://business.phoenixchamber.com/list/member/hensley-beverage-company-phoenix-1544 (last accessed Dec. 1, 2025).

Before filing this motion, SGWS conferred with Hensley twice. Counsel met by videoconference on September 5, 2025, and SGWS provided background on the underlying litigation brought by the FTC and explained SGWS's reasons for serving the subpoena and its need for the requested data. SGWS offered to further confer about the requests, including potentially narrowing the scope. On September 11, 2025, Hensley sent a letter objecting to the subpoena in its entirety. *See* Ex. 2 (indicating Hensley would "not produce any of the requested documents."). On September 26, the parties conferred again, and SGWS reiterated its willingness to engage on the specific requests and see whether a compromise could be reached. On September 29, 2025, Hensley confirmed by email that Hensley would not produce any documents in response to the subpoena on the grounds stated in the letter. *See* Ex. 3. Three days after Hensley's second refusal to produce any information, the Court in the Central District of California stayed the case due to the federal government shutdown. Once funding was restored, SGWS reached out again on November 20, 2025, to see if Hensley would reconsider its position before SGWS moved forward with filing to enforce the subpoena. SGWS received no response. SGWS and Hensley are thus at an impasse. On November 26, 2025, the Court entered an amended scheduling order, effectively lifting the stay. Accordingly, with the stay lifted, SGWS now respectfully moves this Court to compel Hensley to produce documents responsive to SGWS's requests.

## LEGAL STANDARD

A Rule 45 subpoena is subject to the same scope of discovery as is permitted under Rule 26. *Brown v. Sperber-Porter*, 2017 WL 10409840, at *2 (D. Ariz. Nov. 6, 2017). Rule 26(b)(1) provides that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). *See also Evanston Ins. Co. v. Murphy*, 2020 WL 6869292, at *2 (D. Ariz. Nov. 23, 2020). District courts have broad discretion in controlling discovery, *id.*, including by determining relevance and proportionality for discovery purposes on a motion to compel. *O.T. v. BabyBjorn Inc.*, 2022 WL 17219007, at *3 (C.D. Cal. Apr. 4, 2022); *Evanston Ins. Co.*, 2020 WL 6869292, at *5; *Toomey v. Arizona*, 2022 WL 1452747, at *3 (D. Ariz. May 9, 2022).

## ARGUMENT

Hensley's objections that the subpoena requests are irrelevant, overbroad, unduly burdensome, and seek confidential information are without basis. *See* Ex. 2. The information sought is relevant and proportional to the needs of the broad case that the FTC has brought against SGWS. The information will support SGWS's meeting competition and cost justification affirmative defenses and its arguments against the FTC's desired injunctive relief. SGWS cannot obtain the information from any other source, and the protective order addresses any confidentiality concerns. The Court should compel production.

**A. SGWS's Requests Are Relevant**

District courts have "broad discretion in determining relevancy for discovery purposes," and the Court should use its discretion to compel production here, particularly given that "relevancy is not a high threshold." *United States v. Gilead Scis., Inc.*, 2021 WL 8893652, at *4, *7 (C.D. Cal. Feb. 22, 2021); *see also Toomey*, 2022 WL 1452747, at *3. When "the discovery sought 'appears relevant on its face,' the burden shifts to the objecting party to 'establish[] lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 2021 WL 10312432, at *10 (C.D. Cal. Nov. 5, 2021) (quoting *Krause v. Nev. Mut. Ins. Co.*, 2014 WL 496936, at *3 (D. Nev. Feb. 6, 2014)).

Hensley argues that it is "unclear how [the requested] information would be relevant to the Action…when Hensley and its products are not at issue in the Action." Ex. 2. This conclusory objection fails to satisfy Hensley's burden to rebut the presumption in favor of broad discovery. SGWS's requests are relevant to all aspects of its case.

*First*, the requested documents are relevant to SGWS's statutory defenses of meeting competition and cost justification. To make out a meeting-competition defense, SGWS must show "the existence of facts which would lead a reasonable and prudent person to believe that the granting of a lower price would in fact meet the equally low price of a competitor." *Great Atl. & Pac. Tea Co. v. FTC*, 440 U.S. 69, 82 (1979). "A good-

faith belief, rather than absolute certainty, that a price concession is being offered to meet an equally low price offered by a competitor is sufficient to satisfy the § 2(b) defense." *Id.* (citations omitted); *see also United States v. U.S. Gypsum Co.*, 438 U.S. 422, 453 (1978) ("[G]ood faith is a flexible and pragmatic, not technical or doctrinaire, concept") (citation omitted). Several of SGWS's requests relate to Hensley's pricing data, which will provide foundation for SGWS's meeting competition defense. *See* Ex. 1, Requests 1, 3, 7-9, and 12-13.

Hensley cannot oppose discovery on the grounds that SGWS must have been aware of Hensley's prices for those prices to be relevant. If a good-faith belief exists that a competitor was offering a lower price, there is "no need" for SGWS "to verify that each customer had actually received a competitor's offer of an equally low price." *William Inglis & Sons Baking Co. v. ITT Cont'l Baking Co.*, 668 F.2d 1014, 1046 (9th Cir. 1981) (explaining that "[m]arketwide price reductions are permissible when there is a reasonable basis to believe that equally low offers are available from competitors throughout the market," even where a defendant has not documented "that each buyer received specific offers from competitors."); *see also Uinta Oil Ref. Co. v. Cont'l Oil Co.*, 36 F.R.D. 176, 180-81 (D. Utah 1964) (explaining it "may well be" that the meeting competition "defense does not require a competitor to have actual knowledge of the identity and price of the competitor whose price is being met" and "pricing data…are clearly relevant" to discovery).

Federal courts have permitted antitrust defendants to subpoena competitors' purchase, sales, and pricing data to prepare a meeting competition defense. *See, e.g., Uinta*

*Oil*, 36 F.R.D. at 180-81 (denying non-party competitor's motion to quash defendant's subpoena seeking purchase and sales prices); *United States v. Am. Optical Co.*, 39 F.R.D. 580, 585-87 (N.D. Cal. 1966) (holding that competitor prices and profit and loss statements were "both relevant and necessary" to the defendant's meeting-competition defense).

It is of no consequence that Hensley and SGWS distribute different products. Generally, because of exclusivity agreements, there is only one distributor of an alcohol product in a given state. But different alcohol products compete[3] and the prices of competing products are relevant. An Arizona customer considering tequila at Total Wine & More in Phoenix can choose between purchasing the 3 Amigos Tequila brand Hensley distributes (750 ml, $34.99) and the Patrón Silver tequila SGWS distributes (750 ml, $34.99).[4] Likewise, retailers negotiating with SGWS and Hensley can play those products against one another to achieve the best price.

---

[3] *See generally* Daniel M. Micu et al., *Competitive Advantage in the World of Wine – An Analysis of Differentiation Strategies Developed by Sectoral Brands in the Global Market*, Foods (May 2025), available at https://www.mdpi.com/2304-8158/14/11/1858 (accessed Dec. 2, 2025) (describing how global wine markets are "highly competitive," and providing examples of how wine brands attempt to differentiate to gain a competitive advantage); Bartender Spirits Awards, *Competition in the Spirits Industry: A Primer*, https://bartenderspiritsawards.com/en/blog/insights-1/competition-in-the-spirits-industry-a-primer-603.htm (accessed Dec. 1, 2025) (describing competition between established, heritage spirits brands and emerging craft distilleries).

[4] Patron Silver Tequila, Total Wine & More – Phoenix (Desert Ridge), https://www.totalwine.com/spirits/deals/tequila/blanco-silver/patron-silver-tequila/p/5654750?s=1003&igrules=true (accessed Dec. 1, 2025) and 3 Amigos Organic Blanco Tequila, Total Wine & More – Phoenix (Desert Ridge), https://www.totalwine.com/spirits/deals/tequila/blanco-silver/3-amigos-organic-blanco-tequila/p/133766750?s=1003&igrules=true (accessed Dec. 1, 2025); Arizona Beverage Portfolio, Hensley Beverage Company, https://hensley.com/portfolio/ (accessed Dec. 1, 2025).

SGWS's requests are also relevant to SGWS's cost-justification defense. *See, e.g.*, Ex. 1 Requests 5 and 6. The RPA exempts as legal price "differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered." 15 U.S.C. § 13. SGWS seeks to prove that the differences in prices that it charges to its chain retail customers and independent retailers are justified by cost savings and consistent with industry practice. The data SGWS requests about costs in the industry will support SGWS's argument that its price differentials are justified by the costs of goods sold.

*Second*, SGWS's requests are relevant to SGWS's rebuttal of the FTC's prima facie case. To sustain an RPA claim, the FTC must show that SGWS's pricing practices had an anti-competitive effect on the market. *See Volvo*, 546 U.S. at 176. The FTC alleges injury by pairing transactions from two retailers—one favored and one disfavored—and pointing to differences in SGWS's prices to the highlighted retailers. SGWS believes several of the retailers the FTC pairs are not in competition and therefore any difference in prices charged to them would not damage competition. SGWS expects information produced in response requests pertaining to retailers will provide support for this defense. *See* Ex. 1, Requests 1, 6-8, and 12. This includes information on the array of products sold to retailers, the volumes, and prices, all of which will show that different retailers have different business models and do not necessary compete simply because they sell alcohol products.

*Third*, Requests 13 and 14 relating to post-and-hold laws and "come to rest" laws will inform SGWS's jurisdictional argument that distributors' beverage alcohol sales do

not cross state lines and so fail to trigger the RPA, which applies only to interstate commerce.

**B. SGWS's Requests Are Not Overbroad or Unduly Burdensome**

Hensley cannot refuse to produce any documents based on conclusory claims of burden. *See* Ex. 2 (claiming the subpoena seeks "a voluminous amount of information,"). Objections of undue burden must be accompanied by "specific examples" to substantiate the alleged burden, as the objecting party bears the "burden…to demonstrate harm or prejudice that will result from the discovery sought," *In re Tesla, Inc. Sec. Litig.*, 2021 WL 3615906, at *1 (N.D. Cal. Aug. 16, 2021)—a burden "difficult to meet." *U.S. E.E.O.C. v. Aaron Bros. Inc.*, 620 F. Supp. 2d 1102, 1106 (C.D. Cal. 2009). Hensley has not provided any specifics about the cost or time needed to produce documents in response to the subpoena that would substantiate its burden claim. Hensley therefore cannot meet its "burden of showing that the subpoena is overbroad or unduly burdensome." *Aaron Bros. Inc.*, 620 F. Supp. 2d at 1108; *see also Moshier v. Safeco Ins. Co. of Am.*, 2024 WL 4503901, at *3 (D. Ariz. Oct. 16, 2024) (granting motion to compel where opposing party did "not describe the burden").

Moreover, Hensley had multiple opportunities to engage with SGWS about ways to potentially narrow SGWS's requests and declined to do so. SGWS met and conferred with Hensley twice—on September 5 and September 26, 2025—before filing this motion. Both times, SGWS expressed willingness to engage in good faith about ways to narrow its request. Hensley refused, instead objecting wholesale to the subpoena in its letter and follow-up email. *See* Ex. 2, 3. This Court should not reward Hensley for its unwillingness

to engage with SGWS to resolve its concerns about burden and breadth outside of the courtroom.

**C. SGWS's Requests Are Proportional to the Needs of the Case**

SGWS's subpoena requests are proportional to the broad case the FTC has brought. Proportionality is determined by '"the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Ocean Garden Prods. Inc. v. Blessings Inc.*, 2020 WL 4284383, at *1 (D. Ariz. July 27, 2020) (quoting Fed. R. Civ. 26(b)(1)); *RG Abrams Ins.*, 2021 WL 10312432, at *4 (same). SGWS seeks information relevant to key elements of the FTC's case and SGWS's defenses. To the extent Hensley perceives the requests as broad, they are proportional to FTC's allegations which challenges millions of sales, over an eight-year period for thousands of different products.

Each proportionality factor favors production. The stakes of this case are high: The FTC seeks to enjoin, on a nationwide basis, SGWS's pricing practices that are common in the industry. Such an injunction would require SGWS to radically change its business practices and will harm consumers by increasing prices. Discovery from competitors is crucial for resolving issues in this case, such as whether SGWS's pricing practices are consistent with those of its competitors, pro-competitive, and geared toward meeting competition. Only Hensley can produce the requested documents, which include, in Hensley's words, "confidential, proprietary and/or trade secret information." *See* Ex. 2.

**D. The Protective Order Alleviates Hensley's Confidentiality Concerns**

Finally, Hensley cannot refuse to produce documents because the information sought is confidential. "[O]bjections to … subpoenas … on the grounds that they seek proprietary and confidential information … are typically mitigated by a stipulated protective order, one of which is already in place in this action." *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 2023 WL 5506883, at *21 (C.D. Cal. Aug. 17, 2023). Courts in this district and circuit routinely hold that protective orders are sufficient to address parties' confidentiality concerns. *See, e.g., id.; Ocean Garden*, 2020 WL 4284383, at *7 ("[T]he Court finds that its protective order adequately addresses concerns regarding the confidential nature of the documents."); *Moshier*, 2024 WL 4503901, at *3 (same). Thus, Hensley's concern that producing its "confidential, proprietary and/or trade secret information" "would risk causing substantial damage" to it "considering [SGWS] is a competing beverage distributor" is unfounded. *See* Ex. 2.

**CONCLUSION**

For all these reasons, SGWS respectfully requests that the Court grant the motion to compel and require Hensley to produce documents responsive to SGWS's subpoena.

Respectfully submitted this 2nd day of December, 2025

**CLARK HILL PLC**

By: */s/ Benjamin J. Branson*
Benjamin J. Branson
*Attorneys for Defendant Southern Glazer's Wine and Spirits, LLC*

- And –

**KIRKLAND & ELLIS LLP**
Matthew S. Owen, P.C. (*pro hac vice forthcoming*)
T.J. McCarrick (*pro hac vice forthcoming*)
K. Ross Powell (*pro hac vice forthcoming*)

**CERTIFICATE OF COMPLIANCE WITH LRCIV 7.2(j)**

The undersigned counsel hereby certifies that, prior to filing this motion, the parties engaged in good faith efforts to resolve the discovery dispute at issue through consultation with opposing counsel, by virtual conference and email. Despite these sincere efforts to do so, the parties have been unable to satisfactorily resolve the matter.

Dated this 2nd day of December, 2025

**CLARK HILL PLC**

By:*/s/ Benjamin J. Branson*
Benjamin J. Branson
*Attorneys for Defendant Southern Glazer's Wine and Spirits, LLC*

- And –

**KIRKLAND & ELLIS LLP**
Matthew S. Owen, P.C. (*pro hac vice forthcoming*)
T.J. McCarrick (*pro hac vice forthcoming*)
K. Ross Powell (*pro hac vice forthcoming*)